IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-01783-CBS

STEPHEN E. POTTER,
     Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social Security's final decision denying Mr. Potter's application for Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") benefits. [1]  Pursuant to the Order of Reference dated December 29, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. # 18).  The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings.  SSI pays benefits to people with disabilities whose income and resources are below set limits.  Benefits payable under Title II (SSDI) are based on earnings history and are generally higher than those for Title XVI (SSI).  There are also restrictions and exclusions attached to Title XVI that are not attached to Title II.  Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level.  Regulations for Title II are found at 20 C.F.R. §404; those for Title XVI are found at 20 C.F.R. §416.

I.      Procedural History

Mr. Potter filed applications for SSI and SSDI benefits with a protective filing date of

January 8, 2011.[2]  (*See* Administrative Record ("Tr.") (Doc. # 8) at 160, 201, 231).  He claimed

that he became disabled on January 7, 2011.  (*Id.*).  His claims were denied on June 22, 2011

and he requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 95-96, 99-105).

ALJ Patricia E. Hartman held a hearing on July 30, 2012.  (Tr. 44-74).  Accompanied by a lay

representative, Mr. Potter testified at the hearing.  (*Id.*).  Ms. Deborah Christensen testified at

the hearing as a Vocational Expert ("VE").  (Tr. 67-73).  The ALJ issued her written decision on

August 28, 2012, concluding that Mr. Potter was not disabled within the meaning of the Act.  (Tr.

34-43).  On October 4, 2012, Mr. Potter sought review of the ALJ's decision.  (Tr. 30).  Counsel

was appointed for him on November 8, 2012.  (Tr. 29).  The Appeals Council afforded Mr. Potter

an extension of time, received additional evidence and on May 8, 2014 denied his request for

review.  (Tr. 1-5, 19-21, 28, 269-73).  Mr. Potter filed this civil action on June 26, 2014.  (*See*

Doc. # 1).  The court has jurisdiction to review the final decision of the Commissioner.  42

U.S.C. § 405(g).

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the

record as a whole to determine whether the . . . decision is supported by substantial evidence

and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996)

(internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750

---

[2] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form.  20 C.F.R. § 404.610.  However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date.  *Id.* § 404.630.

(10th Cir. 1988) (court "must determine whether the . . .  decision of nondisability, . . . is

supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion") (internal quotation marks and citation omitted).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court "must affirm . . . if the decision is

supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988)

(citing 42 U.S.C. § 405(g)).  "A decision is not based on substantial evidence if it is overwhelmed

by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v.*

*Bowen*, 851 F.2d 297, 299 (10th Cir.1988).  The court "may neither reweigh the evidence nor

substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th

Cir. 2001), *as amended on denial of reh'g* (April 5, 2002).  *See also Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No.

11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and

come to a different conclusion than the ALJ) (citation omitted).


III.    Analysis

        An individual "shall be determined to be under a disability only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); §

1382c(a)(3)(B).  The Commissioner has developed a five-step evaluation process for

determining whether a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52

(describing the five steps in detail).  "The claimant bears the burden of proof through step four of

the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can

be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step

is not necessary."  *Williams*, 844 F.2d at 750.  In the first three steps, the Commissioner

determines whether claimant has engaged in substantial gainful activity since the alleged onset,

whether she has severe impairments, and whether the severity of her impairments meets or

equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *Id.* at 750–51.

If plaintiff's impairment does not meet or equal a listed impairment, the evaluation

proceeds to step four, where the Commissioner assesses a claimant's Residual Functional

Capacity (RFC), 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant must establish that he

does not retain the RFC to perform his past relevant work.  *Pipkins v. Colvin*, No. CIV-14-136-

RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015).  The RFC is what a

claimant is still "functionally capable of doing on a regular and continuing basis, despite his

impairments; the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  At

step four of the five-step analysis, "a claimant's RFC is measured against the physical and

mental demands of the claimant's past relevant work to determine whether the claimant can

resume such work."  *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18,

2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th

Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's

physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the

claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet

the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted). The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999). "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work." *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

Mr. Potter was 46 years old at the time he applied for disability benefits. He graduated from high school and attended some college. (Tr. 51, 83, 93). He worked as a flooring salesman for approximately fifteen years. (Tr. 41, 52-54, 189-91, 193, 210-14, 239). He has not worked since he lost his job in May of 2010 when his employer went out of business and he planned to move to Colorado and start a new job at Carpet Mill stores in Aurora, Colorado. (Tr. 41, 52, 204, 210, 239). During a visit to Florida, he was admitted to the emergency department of Sacred Heart Hospital in Pensacola on January 7, 2011, when he experienced right facial and

arm weakness.  (Tr. 324, 482).  Mr. Potter did not have any significant past medical history and was newly diagnosed as hypertensive and as having an intercranial hemorrhage.  (Tr. 321, 409, 434).  His condition did not require operative intervention.  (Tr. 410).  He was admitted to the Intensive Care Unit (ICU) for aggressive blood pressure management.  (Tr. 294).  His symptoms improved significantly but he "continued to have residual expressive aphasia, mild dysphasia, and right hemiparesis, upper extremity greater than lower extremity."  (Tr. 321, 434, 482).  He was discharged to his father's home on January 18, 2011.  (Tr. 410, 482).  On January 26, 2011, he was admitted to the Rehabilitation Institute of West Florida, where he received occupational, physical, and speech therapy.  (Tr. 410, 434, 443, 482).  He was discharged on February 23, 2011. (Tr. 443, 482).  In April or May of 2011, he moved to Aurora, Colorado, where he lives in a house with his girlfriend and her children.  (Tr. 7, 50, 443, 482, 495, 502).

The ALJ determined that Mr. Potter: (1) had not engaged in substantial gainful activity since the alleged onset date of disability, January 7, 2011, (2) had as severe impairments "a history of post hemorrhagic stroke with minimal right sided weakness and hypertension," (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), and (4) did not have the RFC to perform his past relevant work as a floor covering salesperson.  (Tr. 37, 41).  The ALJ determined that Mr. Potter had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally operate foot controls with the right lower extremity, occasionally operate hand controls with the right upper extremity, frequently handle, finger and feel with the right upper extremity, cannot climb ladders and scaffolds, but can occasionally kneel and crawl, cannot work at unprotected heights or with

moving mechanical parts or vibrating tools, is limited to simple, routine, repetitive tasks, cannot

perform a production rate pace, can perform goal oriented work, and can perform Specific

Vocational Preparation ("SVP") 2-type tasks.  (Tr. 37, 41).  The ALJ relied on the testimony of

the VE to reach her decision at step five that Mr. Potter could perform light work with certain

limitations.  (Tr. 41-42).  The ALJ concluded that Mr. Potter was not disabled.  (Tr. 42-43).

Mr. Potter alleges that: (1) the ALJ "failed to incorporate all of the medically determinable

impairments" at step two of the evaluation process, (2) the ALJ's determination at step three of

the evaluation process, that his mental impairments did not meet the criteria of a listed

impairment, was not supported by substantial evidence, (3) the ALJ's determination of his RFC

at step four was not supported by substantial evidence, and (4) the Commissioner did not meet

her burden at step five.  (*See* Doc. # 12 at 11-32 of 33).


A.      Medically Determinable Impairments

"[A]t step two an ALJ must consider the claimant's impairment or combination of

impairments, and determine whether that impairment or combination of impairments significantly

limits plaintiff's ability to do basic work activities."  *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1193

(D. Kan. 2007) (internal quotation marks and citation omitted).  Although the ALJ found at step

two that Mr. Potter had the medically determinable severe impairments of post hemorrhagic

stroke with minimal right sided weakness and hypertension, Mr. Potter claims that the ALJ did

not adequately consider his "visual field impairment, speech aphasia," and obesity.  The court

disagrees.

As the Tenth Circuit Court of Appeals has explained, "once the ALJ finds that the

claimant has *any* severe impairment, he has satisfied the step two analysis."  *Parise v. Astrue*,

No. 10-3062, 421 F. App'x 786, 787-88 (10th Cir. Nov. 30, 2010) (citing *Oldham v. Astrue*, 509

F.3d 1254, 1257 (10th Cir. 2007) (emphasis sin original).  "Once an ALJ determines that the

claimant suffers from one or more medically determinable severe impairments, [s]he moves to

the next step in the sequential evaluation process."  *Parise*, 421 F. App'x at 788.  "The ALJ . . .

made an explicit finding that [the claimant] suffered from severe impairments. That was all the

ALJ was required to do in that regard."  *Id.*(internal quotation marks and citation omitted).

Because the ALJ found that Mr. Potter had two medically determinable severe impairments, her

failure to find his "visual field impairment, speech aphasia," and obesity were severe

impairments is not grounds for reversal.[3]  "After finding severe impairments, the ALJ still had the

task of determining the extent to which those impairments" restricted Mr. Potter's ability to work.

*Oldham*, 509 F.3d at 1257.  "[A] finding of severe impairments (which is made at step two) does

not require the ALJ to find at step five that the claimant did not have the residual functional

capacity to do any work."  *Oldham*, 509 F.3d at 1257.  The court finds no error on this issue.


B.      Listed Impairments

        Mr. Potter alleges that the ALJ's determination that his impairments did not meet or equal

a listed impairment was not supported by substantial evidence in the record.  "At step three of

the sequential analysis, the determination is made whether any medically severe impairment,

alone or in combination with other impairments, is equivalent to any of a number of listed

impairments so severe as to preclude substantial gainful employment."  *Duncan v. Colvin*, No.

14-5081, 2015 WL 1475314, at * 6 (10th Cir. Apr. 2, 2015).  The Commissioner has provided a

---

        [3]      The ALJ included "[s]ensory or motor aphasia resulting in ineffective speech or communication" in her list of his combination of impairments. (Tr. 37).  She noted that he alleged he was unable to work because of his "difficulty speaking" and inability "to see out of right eye." (Tr. 38).

"Listing of Impairments" which describes certain impairments that are considered disabling.  20

C.F.R. §§ 404.1525(a), 416.925(a);  *see also* Pt. 404, Subpt. P, App. 1 (Listing of Impairments).

If an impairment meets or equals all of the requirements of a listed impairment, the impairment

is conclusively presumed disabling.  *Williams*, 844 F.2d at 751;  *see also Bowen v. Yuckert*, 482

U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled").  Mr. Potter "has the burden at step three

of demonstrating, through medical evidence, that his impairments 'meet all of the specified

medical criteria' contained in a particular listing."  *Riddle v. Halter*, No. 00–7043, 2001 WL

282344 at *1 (10th Cir. Mar. 22, 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990),

*superseded by statute on other grounds*).  *See also Duncan*, 2015 WL 1475314, at * 6("a

claimant has the burden to present evidence establishing [his] impairments meet or equal listed

impairments").  "An impairment that manifests only some of [the listing] criteria, no matter how

severely, does not qualify" to meet or equal the listing.  *Zebley*, 493 U.S. at 530.  "Because the

Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."

*Caviness v. Apfel*, 4 F.Supp.2d 813, 818 (S.D.Ind.1998).

The ALJ determined that Mr. Potter's history of "post hemorrhagic stroke with minimal

right sided weakness, and hypertension" are severe impairments.  (Tr. 36).  However, the ALJ

determined that Mr. Potter's impairments, considered individually or in combination, do not meet

or equal the severity of a Medical Listing.  (Tr. 36-37).  To support this determination, the ALJ

addressed an extensive list of medical criteria which are necessary to a finding that Mr. Potter

meets or equals Listing 4.00, 4.04, or 11.04, but which are not present in the evidence in this

case.  (Tr. 37).  The ALJ noted that no medical professional suggested or concluded that a

Medical Listing was met or equaled.  (Tr. 36-37).  Nor did the ALJ's independent review of the

record support a finding that a Medical Listing was met or equaled.  (Tr. 37).

Mr. Potter argues that his impairments meet or equal the severity of "Listing 2.03 and/or

2.04, 4.04, or 11.04.A."  (*See* Doc. # 12 at 22-23 of 33).  Contrary to his assertion that he "does

not bear the burden" to "show how the medical findings satisfy a Listing" (*see* Doc. # 14 at 10 of

14), Mr. Potter "has the burden at step three of demonstrating, through medical evidence, that

his impairments meet *all* of the specified medical criteria contained in a particular listing."

*Birkinshaw v. Astrue*, 490 F. Supp. 2d 1136, 1143 (D. Kan. 2007) (citations omitted) (emphasis

in original).  He has not met his burden here.  The record is consistent with the ALJ's

determination that Mr. Potter's impairments did not meet a Listing.  (Tr. 262, 277, 525-31).  The

ALJ stated the specific Listings considered and identified specific criteria for each listing that are

not reflected in the evidence, "thus demonstrating that plaintiff failed to meet [his] burden."

*Birkinshaw*, 490 F. Supp. 2d at 1143.

Mr. Potter also contends that the ALJ erred in not considering the effect of his obesity in

combination with his other conditions. Although obesity is recognized as "a medically

determinable impairment that is often associated with disturbance of the musculoskeletal

system . . . [which] can be a major cause of disability . . ." and must be considered in making an

RFC determination, 20 C.F.R. § 404, Subpt. P, App. 1, 1.00(Q), it is not itself a listed disability,

nor is it defined in the Regulations.  *Jones v. Colvin*, No. 13-4831, 2014 WL 2862245, at * 10

(E.D. Pa. June 24, 2014).  "Obesity in combination with another impairment may or may not

increase the severity or functional limitations of the other impairment." SSR 02–1p.  In

considering whether a claimant is obese, the adjudicator relies on the judgment of a physician

who has examined the claimant and has reported his or her appearance or build, height, and weight.  SSR 02–1p (2002).

Mr. Potter correctly points out that the ALJ did not mention his obesity in her decision despite the fact that his weight and obesity was mentioned in the record.  (*See* Tr. 89-90, 95-96, 285, 411, 416, 421, 426, 435, 457, 462, 467, 472, 498, 502, 511, 513, 515).  Dr. Pham noted on June 1, 2011 that Mr. Potter "is slightly obese male (currently at 248-lbs, down from 345)."  (Tr. 502).  At the hearing, the ALJ noted Mr. Potter's weight and that he was approximately 85 pounds lighter than when he was working.  (Tr. 49-50).  Nowhere in the record is any mention that his obesity is related to any functional limitations or that it affects his ability to work.  He did not raise his obesity as a basis for disability with his medical treatment providers or in the course of the administrative proceedings.  (*See, e.g.*, Tr. 7-14, 44-74, 204, 222-29, 233-38).  An ALJ's failure to mention a claimant's obesity does not warrant remand where the claimant has not expressly relied on obesity as a basis for establishing functional limitations during the course of the administrative proceedings.  *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005).  *See also Bowser v. Commissioner*, No. 03-16066, 121 F. App'x 231, 236-37 (9th Cir. Feb. 7, 2004) (holding that ALJ did not err in failing to discuss obesity where plaintiff did not claim it as disabling and no physician opined that plaintiff's weight caused her afflictions).  "Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the disease or impairment rather than the mere diagnosis of the disease or name of the impairment."  *McKean v. Colvin*, No. 1:13-CV-2585, 2015 WL 1201388, at * 7 (M.D. Pa. Mar. 16, 2015) (citations omitted).

In sum, Mr. Potter points to no evidence in the record that meets the criteria of the Listings or that is inconsistent with the ALJ's finding at step three.  Because Mr. Potter has not

satisfied all of the Listings' criteria, he cannot prevail at step three as a matter of law.  The court

finds no reversible error on this issue. [4]


C.      Residual Functional Capacity and Step Five Determination

"A claimant's RFC to do work is what the claimant is still functionally capable of doing on

a regular and continuing basis, despite his impairments: the claimant's maximum sustained work

capability."  *Williams*, 844 F.2d at 751.  "In making the RFC assessment, an ALJ considers how

an impairment, and any related symptoms, may cause physical and mental limitations that affect

what a claimant can do in a work setting."  *Davison v. Colvin*, No. 14-1122, 596 F. App'x 675,

680 (10th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(1)).  The RFC represents "the most [a

claimant] can still do despite [his] limitations."  *Id.*  "The RFC assessment is made based on all

the evidence in the record, both medical and non-medical."  *Davison*, 596 F. App'x at 680.

The ALJ found that Mr. Potter had the RFC to perform light work, with the additional

limitations that were presented to the VE.  (Tr. 37-40, 67-73).  Mr. Potter argues that "[t]he ALJ

did not properly consider whether he could perform the *sustained* requirements of work given

the combined effect of his medically determinable severe and nonsevere impairments." (Doc. #

12 at 25 of 33) (emphasis in original).  He further argues that the ALJ's failure to properly

consider the combined effect of all of his medically determinable severe and nonsevere

impairments and incorporating appropriate limitations into his RFC means that the ALJ could not

properly rely on the VE's testimony regarding the existence of jobs in the economy that he could

---

[4]      As the court finds, *infra.*, that the ALJ's findings at subsequent steps in the sequential
evaluation process are supported by substantial evidence, any alleged error at step three was harmless.
*See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of
the sequential evaluation process may provide a proper basis for upholding a step three conclusion that
a claimant's impairments do not meet or equal any listed impairment.").

12

perform.  (Doc. # 12 at 29-30 of 33).  The court examines the record to determine whether the evidence supports the conclusion that Mr. Potter's combined impairments are not disabling. *Williams*, 844 F.2d at 756-57.

Based upon the evidence in the record, the ALJ assessed Mr. Potter's alleged inability to work due to "Stroke, [i]nability to use his right side effectively, High Blood pressure," "Difficulty speaking," and inability "to see out of right eye (large black area)."   (Tr. 204, 222).  The ALJ considered the records of Mr. Potter's medical condition and progress.  (Tr. 38-39).  The medical records demonstrate that his condition steadily and significantly improved during and after his stay in the hospital and the rehabilitation facility in Florida in January and February of 2011.  (Tr. 290, 294, 299, 301, 304-05, 345-46, 365,410-11, 416, 444, 449, 457, 459, 462, 464, ).  Upon discharge from the rehabilitation facility on February 23, 2011, he was "able to express basic daily needs with 50-74% accuracy and comprehend basic daily needs with greater than 90% accuracy."  (Tr. 439).

In March of 2011, he was recovering well and his blood pressure was well controlled. (Tr. 285).  A neurologic evaluation revealed "no impairment of recent or remote memory, normal attention span and ability to concentrate and able to name objects and repeat phrases. Appropriate fund of knowledge."  (Tr. 286).  The record indicated "Sensory: Normal.  Motor: - Normal.  Coordination – Normal.  Gait - Normal."  (Tr. 285-86).  A Speech-Language Pathology Evaluation revealed overall "moderate receptive and expressive aphasia with mild apraxia" and mostly high scores in auditory, verbal, reading, and written expression and cognition.  (Tr. 488-489).

In April of 2011, the examination record showed well controlled blood pressure, "Full range of motion in all joints," Motor: - Normal.  Gait - Normal" and "Mental Status: - Normal."

13

(Tr. 495-496).  "Neurologic evaluation reveals  - alert and oriented x 3 with no impairment of recent or remote memory, normal attention span and ability to concentrate, able to name objects and repeat phrases.  Appropriate fund of knowledge , normal visual acuity, pupils equal and reactive to light and accommodation, . . . symmetrical functioning of facial nerves."  (Tr. 496). Mr. Potter indicated that he was "moving out of town in 2 weeks and wants medications refills only."  (Tr. 497). [5]

On June 1, 2011 Dr. Pham's examination notes indicate that Mr. Potter "self-referred for follow[ ]up care of a stroke he suffered" on January 7, 2011.  (Tr. 502).  He "had recovered well," had "no complaints today," and the "[g]eneral exam was unremarkable."  (Tr. 502). "Neurologically, he was appropriate mentally.  Speech was fluent."  (Tr. 502).  "There was slight right lower facial droop," "minimal right side weakness," and "no significant pronator drift."  (Tr. 502).  "He had decreased pin perception on the right side, rated at 3/10 in the arm and 1/10 in the leg."  *Id.*  "He ambulated well."  (Tr. 502).

In July of 2011, examination notes of Herman Hasselkus, M.D. at Rocky Mountain Internal Medicine indicated that Mr. Potter's blood pressure was well-controlled, that he had "no significant motor deficits," and that he "denie[d] difficulty with concentration, poor balance, headaches, disturbances  in coordination, inability to speak, falling down, tingling, brief paralysis, visual disturbances, seizures, weakness, sensation of room spinning, tremors, fainting, excessive daytime sleeping, and memory loss."  (Tr. 517-518).  He had no swelling in his extremities and "normal full range of motion of all joints."  (Tr. 518).  He was experiencing

---

[5]    The ALJ noted a Physical Residual Functional Capacity Assessment prepared on April 29, 2011 by a State Agency disability examiner, or single decision maker ("SDM").  (Tr. 40, 274-281).  While the ALJ acknowledged that it is not a medical opinion and gave it no evidentiary weight, she noted that the SDM's assessment was "in accord with the medical evidence, not at odds with it."  (Tr. 40).  It is evident in the ALJ's decision that she relied upon the findings in the medical record and did not rely upon the opinion of the SDM when assessing Mr. Potter's RFC.

impaired sensation in his lower extremities to pinprick and light touch and "reduced visu[al] field right eye lower and lateral quarter." (Tr. 517, 519).

In September of 2011, Mr. Potter reported to David C. Baez, M.D. at Rocky Mountain Internal Medicine "disturbances in coordination and weakness." (Tr. 514).  The record noted right hemiparesis.  (*Id.*).  His blood pressure remained well controlled and the record does not reflect that he mentioned any vision problems.  (Tr. 514-16).

In February 2012, Mr. Potter complained to Dr. Baez of pedal edema and weakness.  (Tr. 509-510).  However, the examination notes indicated no edema in the extremities and "normal full range of motion." (Tr. 511).  His blood pressure remained well controlled.  (Tr. 511).  The medical record did generally note "Neurologic: Hemiparesis." (*Id.*).  Dr. Baez noted Mr. Potter was "alert" with "normal attention span and concentration." (Tr. 512).  The record does not reflect that Mr. Potter raised any vision problems on that date.  (Tr. 514-16).

On March 27, 2012, Mr. Potter saw Kevin J. Anderson, O.D. for a routine eye exam, his first eye exam in over twenty years.  (Tr. 530).  Dr. Anderson found his visual "acuities were OD 20/15, OS 20/15 and OU 20/15 at the distance and 20/25 at near." (Tr. 530).  Dr. Anderson reported that the "maculas of both eyes are completely clear of any hypertensive retinopathy at this time." (Tr. 530).  He also noted that visual field "testing was performed and resulted in a bilateral homonymous hemianopsia, involving both eyes." (Tr. 530).  Dr. Anderson advised Mr. Potter to have yearly eye examinations.  (*Id.*).

The ALJ further considered Mr. Potter's testimony regarding his abilities and activities. (Tr. 39).  He indicated that "[m]y right side is about probably 60 to 70 percent strength wise." (Tr. 58).  He exhibited no difficulty speaking during his testimony.  (Tr. 39, 46-67).  He described

numerous daily activities that do not support a finding that he is disabled and unable to work. (Tr. 58-67).

The ALJ also considered the opinions of Ian Mott, M.S.Ed., CRC, and Dr. Khoi D. Pham. M.D. (Tr. 502, 505-08). The ALJ treated Mr. Mott as an "other source" who can provide evidence to show the severity of the claimant's impairment(s) and how it affects his ability to work, *see* 20 C.F.R. §§ 404.1513(d) and 416.913(d), SSR 06-3p, and accorded his opinion very little weight because he based his opinion as a rehabilitation counselor solely upon Dr. Pham's statement that the claimant is "disabled, not able to work," with no consideration of functional limitations. (Tr. 40, 502, 505).

Dr. Pham's October 17, 2011 assessment of Mr. Potter was based upon one examination on June 1, 2011. (Tr. 502, 506-08). The examination notes of June 1, 2011 do not support Dr. Pham's opinion, expressed ten months later, of "disabled, not able to work." First, while the ALJ considered Dr. Pham's opinion, the ultimate issue of disability is reserved to the Commissioner. *See Franklin v. Astrue*, 450 F. App'x 782, 785 (10th Cir. 2011) (affirming ALJ's decision to assign little weight to opinion that claimant was totally disabled because opinion was unsupported by the accompanying treating medical clinic records, as well as invading the ultimate issue of disability as reserved for the determination of the Commissioner.). Second, Dr. Pham's own examination notes do not support his later opinion that Mr. Potter is "not able to work." (Tr. 502, 508). Dr. Pham's findings on June 1, 2011 and his opinion that Mr. Potter could occasionally sit, stand, and walk are consistent with the objective clinical findings in the record as a whole and with Mr. Potter's testimony regarding his abilities. (Tr. 502, 507). Dr. Pham's subsequent opinion that Mr. Potter is "disabled" and "not able to work" is completely inconsistent with his own findings of Mr.Potter's physical capacities (Tr. 502, 507-08). Dr. Pham's October

16

17, 2011 opinion of disability is also inconsistent with Mr. Potter's own description of his activities. (Tr. 60-67). *See Oldham*, 509 F.3d at 1257 (ALJ reasonably discounted physician opinions in light of other evidence of claimant's capabilities).

In sum, the ALJ's determination of Mr. Potter's RFC is supported by substantial evidence, including objective clinical findings, Mr. Potter's testimony, and the record as a whole. Thus, Mr. Potter's claim that the hypothetical inquiry posed to the VE failed to incorporate all of the impairments and limitations that the ALJ should have included must also fail.[6]

IV.    Conclusion

The Commissioner's determination that Mr. Potter is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude that Mr. Potter was not disabled within the meaning of Titles II and XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his or her own attorney fees and costs.

---

[6]    Even if the ALJ overlooked Mr. Potter's visual field limitations, he could perform two of the occupations identified by the VE with his reduced field of vision. Thus, any error was harmless. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy).

DATED at Denver, Colorado, this 17th day of August, 2015.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge